**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated, | ) ) | Case No. 1:20-cv-07666 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TRIBUNE PUBLISHING COMPANY, | ) | Hon. Judge Matthew F. Kennelly |
| Defendant. | ) | Hon. Mag. Judge Gabriel A. Fuentes |

**PLAINTIFF'S UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    NATURE OF THE CASE .......................................................................... 2

III.   THE PROPOSED SETTLEMENT ............................................................ 3

IV.   ARGUMENT ............................................................................................. 5

      A.    The Settlement Approval Process ......................................................... 5

      B.    The Settlement Merits Preliminary Approval ....................................... 7

            1.    Plaintiff and his counsel have and will continue to adequately represent the Class. ......................................................................... 7

            2.    The Settlement was negotiated at arm's-length and without fraud or collusion. ........................................................................... 8

            3.    The Settlement provides substantial relief for the Class ........................... 9

                  a.    The Settlement is preferable to continued litigation. ................. 11

                  b.    The method of providing relief is effective. ............................... 13

                  c.    The timing and terms of the proposed fee award are reasonable. ................................................................................. 14

            4.    The Settlement treats all Class Members fairly. ..................................... 16

      C.    The Court Should Grant Class Certification for Settlement Purposes ................ 16

            1.    The Rule 23(a) Factors Are Met. ......................................................... 17

                    a.    The Class is sufficiently numerous, and joinder is impracticable. .............................................................................. 17

                    b.    The Class shares many common issues of law and fact. ............ 18

                    c.    Plaintiff's claims are typical of the Settlement Class. ............... 19

                    d.    Plaintiff and his counsel are adequate representatives ............... 19

             2.    The Rule 23(b)(3) factors are satisfied. ................................................ 20

      D.      Scheduling a Final Approval Hearing Is Appropriate. ....................................... 22

V.     CONCLUSION............................................................................................................ 22

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings*,
2012 WL 651727 (N.D. Ill. Feb. 28, 2012) .................................................... 6

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................ 20, 21

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ............................................................................ 20, 21

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) .................................................................. 5, 6, 7

*Bennett v. Behring Corp.*,
96 F.R.D. 343 (S.D. Fla. 1982) ................................................................... 13

*Binissia v. ABM Indus., Inc.*,
2017 WL 4180289 (N.D. Ill. Sept. 21, 2017) ............................................... 8

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014) ............................................................. 19, 20

*Birchmeier v. Caribbean Cruise Line, Inc.*,
896 F.3d 792 (7th Cir. 2018) ....................................................................... 14

*Brown v. Nucor Corp.*,
576 F.3d 149 (4th Cir. 2009) ....................................................................... 19

*Butler v. Sears, Roebuck & Co.*,
702 F.3d 359 (7th Cir. 2012) ....................................................................... 20

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) .............................................................. 20, 21, 22

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ....................................................................... 22

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ..................................................................... 15

*Couser v. Comenity Bank*,
125 F. Supp. 3d 1034 (S.D. Cal. 2015) ....................................................... 10

*Fam. Med. Pharmacy, LLC v. Impax Lab'ys, Inc.*,
  2017 WL 4366740 (S.D. Ala. Sept. 29, 2017) ............................................................. 13

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ........................................................................................ 5

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019) ...................................................................................... 12

*Gomez v. St. Vincent Health, Inc.*,
  649 F.3d 583 (7th Cir. 2011) ...................................................................................... 19

*Gulbankian v. MW Mfrs., Inc.*,
  2014 WL 7384075 (D. Mass. Dec. 29, 2014) ............................................................. 12

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ...................................................................................................... 17

*Hashw v. Dep't Stores Nat'l Bank*,
  182 F. Supp. 3d 935 (D. Minn. 2016) ......................................................................... 10

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................................ 10

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ................................................................................. 10

*In re TikTok, Inc., Consumer Priv. Litig.*,
  2021 WL 4478403 (N.D. Ill. Sept. 30, 2021) ............................................................... 9

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
  728 F.3d 682 (7th Cir. 2013) ...................................................................................... 18

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .................................................................................... 5, 7

*Kamar v. Radio Shack Corp.*,
  254 F.R.D. 387 (C.D. Cal. 2008) ............................................................................... 21

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ...................................................................................... 19

*Kleen Products LLC v. Int'l Paper*,
  306 F.R.D. 585 (N.D. Ill. 2015) ................................................................................. 17

*McCue v. MB Fin., Inc.*,
  2015 WL 4522564 (N.D. Ill. July 23, 2015) ............................................................... 12

*Melito v. Am. Eagle Outfitters, Inc.*,
  2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017) .......................................................................... 9

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ............................................................................................... 17

*Mims v. Arrow Fin. Servs., LLC*,
  132 S. Ct. 740 (2012) ............................................................................................................ 2

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ............................................................................................... 19

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ............................................................................................... 14

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010) ............................................................................................... 18

*Pruitt v. City of Chicago*,
  472 F.3d 925 (7th Cir. 2006) ............................................................................................... 17

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014) ............................................................................................... 15

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ............................................................................................. 19

*Rose v. Bank of Am. Corp.*,
  2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ..................................................................... 10

*Sadowski v. Med1 Online, LLC*,
  2008 WL 2224892 (N.D. Ill. May 27, 2008) ....................................................................... 21

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................................. 10, 12

*Schwyhart v. AmSher Collection Servs., Inc.*,
  2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ..................................................................... 14

*Snyder v. Ocwen Loan Servicing, LLC*,
  2019 WL 2103379 (N.D. Ill. May 14, 2019) ....................................................................... 10

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ......................................................................................... 17, 18

*Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*,
  2018 WL 4539287 (N.D. Ohio Sept. 21, 2018) ................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ................................................................................ 18

*Wreyford v. Citizens for Transp. Mobility, Inc.,*
   2014 WL 11860700 (N.D. Ga. Oct. 16, 2014) ........................................ 14

*Yuzary v. HSBC Bank USA, N.A.,*
   2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ............................................ 12

## Statutes

28 U.S.C. § 1715 ........................................................................................... 4

47 U.S.C. § 227 ........................................................................................ 1, 2

47 U.S.C. § 227(c)(5) ............................................................... 2, 11, 18, 21

## Other Authorities

*Manual for Complex Litig.* (4th ed. 2004) ............................................ 6, 15

McLaughlin on Class Actions (8th ed. 2011) ............................................. 8

Newberg & Conte, Newberg on Class Actions (4th ed. 2002) ............... 5, 6

Wright, *et al.*, *Fed. Practice & Proc.* (3d ed. 2010) ................................. 17

## Rules

Fed. R. Civ. P. 23 ..................................................................................... 7, 15

Fed. R. Civ. P. 23(a)(1) ............................................................................. 18

Fed. R. Civ. P. 23(a)(2) ............................................................................. 18

Fed. R. Civ. P. 23(c)(2)(C)(iii) ................................................................. 14

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................... 6

Fed. R. Civ. P. 23(e)(2) ............................................................................ 6, 7

Fed. R. Civ. P. 23(e)(2)(B) ......................................................................... 8

Fed. R. Civ. P. 23(e)(2)(C)(i) .................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................... 13

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................... 16

### **Regulations**

47 C.F.R. § 64.1200(c)(2) .................................................................................................. 2

47 C.F.R. § 64.1200(c)(2)(i) .................................................................................... 2, 18, 21

47 C.F.R. § 64.1200(c)(2)(ii) ............................................................................................. 2

47 C.F.R. § 64.1200(e) ....................................................................................................... 2

47 C.F.R. § 64.1200(f)(15) ................................................................................................. 2

47 C.F.R. § 64.1200(f)(5) ............................................................................................. 1, 2

I.      **INTRODUCTION**

This case arises from telephone solicitations made on behalf of Defendant Tribune

Publishing Company ("Tribune") to Plaintiff and other consumers, which Plaintiff asserts

violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227's Do Not Call

Registry provisions, arising from an alleged miscalculation of the existing business relationship

("EBR") grace period in 47 C.F.R. § 64.1200(f)(5). Tribune disputes that the calls were

improper. Although the Parties disagree as to the merits of the case, they have agreed to resolve

Plaintiff's claims on a class-wide basis.

The proposed Settlement calls for Tribune to pay $1,700,000 into a non-reversionary

common fund for the benefit of a Settlement Class comprised of persons to whom Tribune's

telemarketing vendor Consumer Engagement Services, LLC ("CES") initiated telephone

solicitations despite their number's registration with the National Do Not Call Registry, between

December 11, 2017 and April 15, 2021. The class is limited to a discrete list of 28,412 unique

phone numbers of former customers identifiable through Tribune's and CES' records. Tribune

has also agreed to modify its EBR practices to help avoid future violations. There is no claims

process: All Class Members with an identifiable address will automatically receive a *pro rata*

distribution of the Settlement Fund, less costs of notice and administration, attorneys' fees and

expenses, and incentive award, estimated to be at least $30 each. All funds will be distributed for

the benefit of the Class, and no money whatsoever will revert to Tribune.

This is an excellent result, considering the risks, burden, and expense of further litigation.

There is substantial reason for this Settlement to be approved, and for the Class to be certified for

purposes of judgment on the proposal, such that notice to the Class is appropriate. As such,

Plaintiff asks that the Court preliminarily approve the Settlement, conditionally certify the

Settlement Class, and permit notice to issue under the terms of the Agreement, as detailed herein.

1

## II.    **NATURE OF THE CASE**

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Relevant here, the TCPA prohibits initiating telephone solicitations to cellular or residential telephone numbers that are registered with the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2), (e). Exceptions exist, however, where for example the subscriber gave prior express invitation or permission for the calls, or where the violations were made in error despite compliant business practices. 47 C.F.R. § 64.1200(c)(2)(i)-(ii). Further, the TCPA defines "telephone solicitation" to exclude calls that occur subject to an established business relationship ("EBR")—i.e., where the calling occurs within 3 months of an inquiry or 18 months of a purchase or transaction by the subscriber. 47 C.F.R. §§ 64.1200(f)(5), (f)(15). The TCPA affords consumers a private right of action for damages and injunctive relief to consumers who incurred at least two such violations in a 12-month period. 47 U.S.C. § 227(c)(5).

Defendant Tribune is a media company and one of the largest newspaper publishers in the country. To generate business, Tribune used a third-party telemarketer, Customer Engagement Services, LLC ("CES"), to call former customers for purposes of trying to get them to renew their subscriptions. But while Tribune provided CES with dates reflecting the last day of a purported EBR with each call recipient, sometimes this date reflected the end date of an unsolicited promotion of free newspapers, rather than the actual date the consumer terminated the relationship.[1] Plaintiff's theory is that Tribune's act of unilaterally sending newspapers to

---

[1]    For example, although Plaintiff cancelled his Chicago Tribune subscription on September 23, 2018, CES continued soliciting him on Tribune's behalf outside of the permissible 18-months window, based on an unsolicited, free "sample" paper Tribune sent him two months later on November 29, 2018.

former customers does not constitute a "voluntary two-way communication" or a "purchase or transaction," and therefore is meaningless for purposes of EBR calculations. Tribune's and CES's records identify 28,412 unique phone numbers, including Plaintiff's, that, despite being on the National Do Not Call Registry, CES called on Tribune's behalf at least twice in a 12-month period after the 18-month EBR period had lapsed (i.e., the "Class List").

Plaintiff George Moore filed this lawsuit on December 22, 2020, after receiving repeated, unsolicited telemarketing calls for Tribune after he terminated the relationship and asked not to be called. Plaintiff's complaint alleges violations of the TCPA arising from telemarketing calls he and others received despite their phone numbers' registration with the National Do Not Call Registry, as well as for violations of the TCPA's internal do-not-call rules. Compl. ¶¶ 31, 40-58.

Plaintiff engaged in first- and third-party discovery as to the calling at issue. Exhibit 2, Burke Decl. ¶ 14. Soon after the Court ordered the Parties to develop a proposal in relation to Plaintiff's motion to compel further discovery, Dkt. 31, the Parties agreed to participate in a mediation, conditioned on Tribune's informal production of additional class-related information. Exhibit 2, Burke Decl. ¶ 14. Following mediation briefing, the Parties participated in an all-day mediation with the Hon. Morton Denlow (ret.) of JAMS on October 4, 2021, during which they reached an agreement in principle. *Id.* The Parties thereafter continued to negotiate the terms of the agreement over the following weeks, ultimately executing the Settlement Agreement that Plaintiff now respectfully asks the Court to preliminarily approve. *Id.*

III. **THE PROPOSED SETTLEMENT**

The Settlement calls for Tribune to create a non-reversionary cash Settlement Fund of $1,700,000, *see* Settlement Agreement ("Agr.") ¶¶ 2.35, 4.3.1, attached as Exhibit 1, to compensate the following Settlement Class:

[A]ll persons who received more than one telephone solicitation from CES

regarding Tribune's goods, products, or services in a rolling 12-month period, more than eighteen months after they terminated their relationship with Tribune and whose telephone number was on the National Do Not Call Registry, limited to persons whose phone numbers are on the Class List.

The "Class List" is limited to the 28,412 individuals on the Class List.

*Id.* § 3.

Notice to the Class will be effectuated by a Settlement Administrator, American Legal Claim Services, LLC, which will send mail notices in the form provided as Exhibit A to the Agreement to all Class Members identified on the Class List,[2] as well as Email Notice in the form provided as Exhibit B to the Agreement to all persons for whom such information is available. *Id.* ¶ 6.1. The Settlement Administrator will also create a dedicated Settlement Website containing relevant documents, a long-form notice in the form of Exhibit C to the Agreement, and other relevant information. *Id.* ¶ 6.2. A toll-free number will also be made available for Class Members to learn more about the Settlement and contact the Settlement Administrator. *Id.* ¶ 6.3.[3] Class Members may opt-out of or object to the Settlement, as well. *Id.* §§ 10-11.

No later than 45 days after the Final Settlement Date, the Settlement Administrator will mail each Class Member with an identifiable address, and who has not opted out, a check in a *pro rata* amount equal to the Settlement Fund less the cost of notice and administration, attorneys' fees and expenses, and any incentive award. Agr. ¶ 13.3. If all of the attorneys' fees, expenses, incentive award,[4] and notice and administration costs are approved as requested, the

---

[2]     To the extent name and address information is not available through Tribune's records, the administrator will do a reverse-lookup to find the best available address. Agr. ¶ 6.1.

[3]     The Settlement also contemplates that Defendant will be responsible for notice required under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *See* Agr. ¶ 3.2.3.

[4]     The Settlement contemplates that Plaintiff may move for an award of attorneys' fees, costs, and an incentive award to be paid from the Settlement Fund, but that such requests generally will not affect or delay the finality of the Final Approval Order or Judgment. Agr. § 14.

average Class Member payment is expected to be at least $30. The Settlement provides for further distributions of any funds remaining due to uncashed distribution checks to those Class Members that cashed their initial checks, to the extent administratively feasible. Agr. ¶ 4.3.5. Amounts remaining after exhausting the redistribution process will be distributed as *cy pres*; Plaintiff asks that the Court designate National Consumer Law Center as *cy pres* recipient. *Id.*[5]

Class Members who do not exclude themselves will release claims tailored to the acts that gave rise to this case, i.e., "arising under the TCPA concerning outbound calls CES made to solicit business for Tribune, between December 11, 2017 and April 15, 2021." Agr. ¶ 2.25. This release is thus narrowly tailored to phone violations arising from the Tribune calls at issue.

## IV.   ARGUMENT

### A.   The Settlement Approval Process.

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (noting that "[i]n the class action context in particular there is an overriding public interest in favor of settlement") (citations, quotations, and internal marks omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also* 4 Newberg & Conte, Newberg on Class Actions § 11:41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here – individual litigation – would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively

---

[5]      *See* https://www.nclc.org/issues/robocalls-and-telemarketing.html.

small value of the claims of the individual Settlement Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A proposed class settlement is presumptively fair where it is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced. 4 Newberg & Conte, Newberg on Class Actions § 11:41 (4th ed. 2002); *Am. Int'l Grp., Inc. v. ACE INA Holdings*, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

Approval of a class action settlement is a two-step process. *Armstrong*, 816 F.2d at 314. At the preliminary approval stage, the question for this Court is whether the settlement falls within a range of possible approval and therefore warrants dissemination of notice apprising class members of the proposed settlement. *Id.* Specifically, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the Court preliminarily approves the class action settlement, it then proceeds to the second step in the review process – the fairness hearing. Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litig.* § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness, and adequacy of a settlement, the court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the

6

litigants and their counsel." *Armstrong*, 616 F.2d at 315. Fed. R. Civ. P. 23 provides that, where a proposed settlement would bind class members, a court may only approve it after a hearing and upon a finding that it is fair, reasonable, and adequate, after considering the following factors:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

   (i)    the costs, risks, and delay of trial and appeal;

   (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in this Circuit have also considered: (1) the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length, and expense of the litigation; (3) the presence or absence of collusion in reaching a settlement; and (4) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc.*, 463 F.3d at 653; *see also Armstrong*, 616 F.2d at 314; *Isby*, 75 F.3d at 1199.

As set forth herein, the Settlement warrants preliminary approval so that persons in the Class can be notified and provided an opportunity to voice approval or opposition.

**B.      The Settlement Merits Preliminary Approval.**

**1.      Plaintiff and his counsel have and will continue to adequately represent the Class.**

The first Fed. R. Civ. P. 23(e)(2) factor—whether "the class representatives and class counsel have adequately represented the class"—is easily met here. Plaintiff has vigorously

prosecuted this action on behalf of the Class through active participation, including by gathering information and materials, responding to discovery requests, staying apprised of the proceedings, and considering and ultimately entering into the Settlement. Exhibit 2, Burke Decl. ¶ 15. There is no indication that Plaintiff has a conflict with any Class Member; his interests in obtaining redress for Tribune's TCPA violations are fully aligned with the Class. *Id.*

Further, Plaintiff has retained highly experienced counsel with expertise in TCPA and class litigation. *Id.* ¶¶ 2-11. Plaintiff's attorneys have vigorously prosecuted this action on a contingency basis, obtained critical discovery and information necessary to litigate and negotiate an informed settlement, and have the means and readiness to continue to advocate for the Class's best interests. *Id.* ¶ 13. Thus, Plaintiff and his counsel have and will continue to adequately represent the Class.

### 2. The Settlement was negotiated at arm's-length and without fraud or collusion.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); Fed. R. Civ. P. 23(e)(2)(B) (identifying whether the proposal was negotiated at arm's-length as a relevant factor supporting approval).

Here, the Parties negotiated their settlement at arm's-length via an all-day, formal mediation with a third-party neutral, the Hon. Morton Denlow (ret.) of JAMS. Agr. ¶ 1.2; Exhibit 2, Burke Decl. ¶ 14; *see Binissia v. ABM Indus., Inc.*, 2017 WL 4180289, at *6 (N.D. Ill. Sept. 21, 2017) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (citation omitted). Judge Denlow was instrumental in assisting the Parties, and the terms of the Settlement has only been finalized after weeks of additional, post-mediation back-and-forth. Exhibit 2, Burke Decl. ¶ 14. Accordingly, there can be no doubt

that the Parties negotiated their settlement at arm's-length, and absent fraud or collusion. *See Melito v. Am. Eagle Outfitters, Inc.*, 2017 WL 3995619, at *11 (S.D.N.Y. Sept. 11, 2017) (finding, in TCPA case, "that the settlement [wa]s the product of arm's-length negotiations" and "procedurally fair" where, inter alia, the parties "mediated with the Honorable Morton Denlow of [JAMS]").

Additionally, the Parties entered into the Settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with continued litigation. Before mediating, the Parties exchanged first-party discovery, Tribune agreed to submit additional information identifying the extent and nature of the calling at issue, and the Parties exchanged pre-mediation briefs presenting the strengths and weaknesses of their respective positions. Exhibit 2, Burke Decl. ¶ 14. Tribune also submitted to confirmatory discovery. *Id.*

As such, the Parties conducted enough discovery to be able to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation before negotiating the Settlement. *See In re TikTok, Inc., Consumer Priv. Litig.*, 2021 WL 4478403, at *9 (N.D. Ill. Sept. 30, 2021) (noting presumption in several circuits "that a class action settlement reached through 'arm's-length negotiations between experienced, capable counsel after meaningful discovery' is fair, reasonable, and adequate") (citing cases). The lack of any fraud or collusion thus supports preliminary approval.

### 3. The Settlement provides substantial relief for the Class.

The relief afforded under the Agreement further supports a finding that the Settlement is fair, reasonable, and adequate.

Most important, the amount of the settlement is substantial. The settlement here does not call for a claim form. Instead, all class members who do not opt out will receive a check for

about $30. This structure means that nearly all class members will recover, rather than just those who submit claims. And while the individual checks here may appear paltry in comparison with settlements that require a claim form, one can do an apples-to-apples comparison with claim-form-required settlements. For example, *Snyder v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-08461 (N.D. Ill.), had a $21.5 million TCPA class settlement that afforded monetary relief on a per-claim basis. The claims rate in *Snyder* was approximately 16%, and each claimant ultimately received around $70 per claim. *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *7 (N.D. Ill. May 14, 2019). If the parties had structured this deal like the *Ocwen* settlement, with a 16% claim rate and 33⅓% attorney's fees, claimants would receive approximately $230 apiece.

In contrast, if the Court grants the awards requested and costs proceed as estimated, all Class Members will receive around $36.54,[6] without having to claim in or do anything other than cash the check. This estimated amount in individual relief comports with other approved TCPA class settlements, but to a far greater number of Class Members than a typical claims-based deal.[7] The Settlement, therefore, readily falls within the range of reasonableness, further supporting preliminary approval.[8]

---

[6]     ($1,700,000 Settlement Fund - $70,000 Estimated Notice and Administration Costs - $566,666 Requested Attorneys' Fees - $15,000 Estimated Expenses - $10,000 Incentive Award) ÷ (28,412 Class Members) = approximately $36.54

[7]     *E.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (approving TCPA settlement estimated at $34.60/claimant); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving TCPA settlement with estimated claimant recovery of $20 to $40); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) ($33.20/claim); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) ($13.75/claim).

[8]     In determining whether a settlement is fair in light of the potential range of recovery, important is the maxim that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 584 (N.D. Ill. 2011) (citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 326 ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this

### a. The Settlement is preferable to continued litigation.

The "costs, risks, and delay of trial and appeal" are relevant considerations to approval of a proposed class settlement. Fed. R. Civ. P. 23(e)(2)(C)(i).

Here, the costs, risks, and delay in continued litigation support notice and ultimate approval of the Settlement. While Plaintiff strongly believes in his claims, Tribune asserts several potentially case-dispositive defenses that pose considerable risk to Plaintiff's ability to obtain relief for himself and a class on a non-settlement basis. For example, Tribune contends that it is not liable for violations by its vendor, CES, and that Plaintiff would be unable to establish vicarious liability on an adversarial basis, given its purported lack of control over CES's calls. Tribune also thinks that, on an adversarial basis, it would be able to poke holes into Plaintiff's adequacy or typicality, based on Plaintiff recording some of the illegal calls at issue in alleged violation of CES's privacy rights, and that CES continued to call him despite a do-not-call request notwithstanding Tribune's generic policies to the contrary. Tribune also contends that Plaintiff would be unable to certify a non-settlement class due to purported manageability issues in identifying class members and individualized inquiries based on consent, EBR, and identifying cellular or residential landline numbers applicable to a do-not-call claim. And Plaintiff could, in the end, simply lose if the Court were to find the TCPA's catch-all defense that the defendant had "reasonable practices and procedures" applicable. 47 U.S.C. § 227(c)(5).

Plaintiff disputes Tribune's defenses and opposition to the certifiability of a litigation class, and thinks he would ultimately prevail. But his likelihood of success at class certification, summary judgment, or trial is far from certain. Litigation would continue to be lengthy and expensive if this action were to proceed. Although the Parties have conducted discovery

---

respect, 'it has been held proper to take the bird in the hand instead of a prospective flock in the bush.'") (citation omitted).

applicable to the Settlement Class, absent approval of the Parties' Settlement, substantial additional work—including further adversarial class and merits discovery,[9] class certification briefing, summary judgment briefing, and trial—would remain. A Rule 23(f) appeal would almost certainly follow any adversarial certification ruling, which would further delay any judgment in favor of the Class. Absent settlement, this case could conceivably drag on for another year or more, all without any guarantee that the Class will obtain *any* redress for Tribune's alleged violations. The Settlement avoids these risks and provides immediate and certain relief. *See Schulte*, 805 F. Supp. 2d at 586 ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").[10]

Further, even if Plaintiff were ultimately successful at trial, at least some courts view awards of aggregate statutory damages with skepticism, and there is a real risk that any such award could be reduced on due process grounds, either in this Court or on appeal. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (affirming District Court's reduction of jury's $1.6 billion class damages verdict in class TCPA case to $10 per call, or $32,424,930).

Given the costs, risks, and delay of further litigation, the Settlement is reasonable. *See Gulbankian v. MW Mfrs., Inc.*, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014) ("Plaintiffs face difficult issues of proof, including maintenance of class status throughout trial, despite substantial individualized ... issues that would be raised at trial in defense.... Settlement thus avoids substantial risks and costs for both sides, giving a certain positive outcome in the face of a

---

[9]     Plaintiff's motion to compel discovery was pending when the Parties agreed to mediate. Dkt. 22, 31. Absent settlement, Plaintiff expects to reinitiate such adversarial discovery efforts.

[10]     *See McCue v. MB Fin., Inc.*, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015) (noting courts "encourage parties to settle class actions early, without expending unnecessary resources," and citing *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013), for finding "early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

costly and uncertain one."); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### b. The method of providing relief is effective.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii).

The Settlement provides for a practical, effective way to identify class member contact information for notice and payment purposes: The Class List reflects phone numbers of former Tribune customers, like Plaintiff, to whom Tribune's telemarketer CES made multiple telephone solicitations in a year after the 18-month EBR window had lapsed. Because Tribune maintains contact information for its customers, the Settlement's use of direct Mail and Email Notice to all Class Members identifiable through such records, supplemented with a reverse-lookup as necessary, is expected to reach all or virtually all of the Class.[11] Agr. ¶¶ 6.1, 6.1.3.

The Settlement's method of providing relief is highly effective because there is no claims process; rather, the Settlement Administrator will automatically issue cash payments by check on a *pro rata* basis to all identifiable Class Members forty-five days after the Final Settlement Date. *Id.* Additionally, Tribune has agreed to modify its practices to cease utilizing free subscriptions as a basis to extend an EBR for former customers—and to thereby prevent the kind of National

---

[11] The Class Member contact information in Tribune's records will also be run against the National Change of Address ("NCOA") database, to ensure that the notice and payment information is updated. Agr. ¶ 6.1; *see Fam. Med. Pharmacy, LLC v. Impax Lab'ys, Inc.*, 2017 WL 4366740, at *7 (S.D. Ala. Sept. 29, 2017) (preliminarily approving TCPA junk fax settlement that contemplated running class member's last known address against NCOA database).

Do Not Call Registry violations at issue from occurring in the future, as to all Class Members. Agr. ¶ 4.2. Because the Settlement will effectively provide relief to the Class, without the need for any claims process whatsoever, this factor favors approval of the Settlement.

### c. The timing and terms of the proposed fee award are reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," is also relevant to whether the relief provided to the Class in a settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel anticipate seeking an award of attorneys' fees not to exceed one-third of the Settlement Fund, or $566,666, plus costs. *Id.* ¶ 14.1, Exs. A-C. This fee is expected to amount to roughly 35% of the Fund, net of notice and administration costs and incentive award—which meets the Seventh Circuit's presumption of reasonableness. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) ("[T]he presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.").

This proposed fee amount also falls squarely in line with other approved TCPA class settlements. *E.g., Birchmeier v. Caribbean Cruise Line, Inc.,* 896 F.3d 792, 795 (7th Cir. 2018) (affirming fee award in TCPA class case that contemplated 36% of the first $10 million); *Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (awarding fees of one-third of fund in TCPA case); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (same); *Schwyhart v. AmSher Collection Servs., Inc.*, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) ("attorneys' fees … of one-third of the Settlement Fund ... is fair and reasonable"). Plaintiff's counsel achieved an excellent result for the Class despite substantial risk in prosecuting this action on a contingency basis, and they should be fairly compensated. And although this case settled relatively quickly,

14

Plaintiff submits that it was counsel's experience and expertise in reviewing Tribune's call and EBR records that forced such an early and excellent resolution.

Plaintiff's counsel will file a separate motion for award of attorneys' fees and costs prior to the objection deadline that addresses the facts and law supporting their fee and cost request. *See* Agr. at Ex. D (proposing 15 days after Notice Deadline). The fee and costs request will likewise be clearly stated in the Class Notice. Agr. at Ex. C. Further, the Settlement creates an entirely non-reversionary fund – meaning that no money is going back to Tribune – and there is no clear-sailing clause that might otherwise raise a red flag of collusion. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) (suggesting clear sailing clause raises risk of collusion, particularly in non-cash settlements). There is thus no difficulty in evaluating the value of the benefit created by Class Counsel's efforts: In addition to the value of Tribune's agreement to modify its practices to avoid future violations, the Settlement Fund is guaranteed at $1,700,000.[12] Agr. ¶ 2.35; *see* Fed. R. Civ. P. 23 Notes ("Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members…. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").[13]

---

[12] The nature of the Class's *pro rata* distribution from the Fund, and lack of a claims process, ensures the Court will know how much an individual Class Member can reasonably expect to receive before approving any fees and costs. The Settlement also sets the Settlement Administrator's deadline to pay Class Members as fifteen days before the deadline to pay Class Counsel. Agr. ¶¶ 13.3, 14.1.1.

[13] Plaintiff's anticipated request of a $10,000 incentive award is likewise reasonable. Such awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive award of $25,000); *see also* Manual for Complex Litig. § 21.62, n. 971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). Unlike unnamed persons in the Settlement Class, who will enjoy the benefits of the Class Representative's efforts without taking any personal action, Plaintiff here exposed himself to investigation, responded to discovery and thwarted with Defendant's assertions that he did something untoward when he recorded Tribune's violative calls, committed himself to all the rigors of litigation in the event the case did not settle, and subjected himself

### 4. The Settlement treats all Class Members fairly.

The Settlement provides meaningful relief to the Settlement Class, and treats all Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D) (identifying whether "the proposal treats class members equitably relative to each other" as a relevant factor).

Under the Settlement, all Class Members have an equal opportunity to receive a payment because the Settlement Administrator will distribute checks automatically on an equal, *pro rata* basis 45 days after the Final Settlement Date. Agr. ¶ 13.3. There will be further redistributions of any uncashed check amounts to the extent feasible. *Id.* ¶ 4.3.5. This straightforward process and equal relief across Class Members supports the fairness of the Settlement.

The release contemplated under the Settlement is equitable among the Class, as well. Under the Agreement, all Class Members will provide a release of claims "arising under the TCPA concerning outbound calls CES made to solicit business for Tribune, between December 11, 2017 and April 15, 2021." Agr. ¶¶ 2.25, 9.1. This release is thus narrowly tailored to the claims at issue in this case, i.e., TCPA claims based on calls made to solicit business for Tribune. Further, the release does not favor or disfavor certain Class Members over others, since it is limited to the discrete Class List of 28,412 phone numbers that received such calls, like Plaintiff, from Tribune's telemarketer CES during the Class Period. Agr. § 3.

Because all relevant factors support approval of the Settlement and issuing notice to the Class, Plaintiff's motion should, respectfully, be granted.

### C. The Court Should Grant Class Certification for Settlement Purposes.

Class certification is proper if Plaintiff satisfies the requirements of Rule 23(a) and one of

---

to all the obligations of a named party, including responding to discovery, providing documents, and considering and approving the Settlement. Exhibit 2, Burke Decl. ¶ 15. The incentive award is thus reasonable and should be preliminarily approved.

the prongs of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires Plaintiff to establish "'numerosity, commonality, typicality, and adequacy of representation.'" *Kleen Products LLC v. Int'l Paper*, 306 F.R.D. 585, 589 (N.D. Ill. 2015) (quoting *Messner*, 669 F.3d at 811). In this case, Plaintiff seeks certification under Rule 23(b)(3), which "requires the court to find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting the Rule) (internal quotation marks omitted).

The purpose of Rule 23 is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there would be none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010). In class actions such as this one, the alternative to certification is reaping the benefits of illegal calls with impunity. *See Mullins*, 795 F.3d at 658.

### 1.     The Rule 23(a) Factors Are Met.

#### a.     The Class is sufficiently numerous, and joinder is impracticable.

Fed. R. Civ. P. 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." The Seventh Circuit has indicated that even a class of forty may be sufficient to warrant class certification. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006) (noting that "[s]ometimes 'even' 40 plaintiffs would be unmanageable").

In this case, there are 28,412 Class Members. Agr. § 3. This more than establishes that

"joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied.

### b. The Class shares many common issues of law and fact.

"One of the requirements for a class action in federal court is the existence of 'questions of law or fact common to the class.'" *Suchanek*, 764 F.3d at 755 (quoting Fed. R. Civ. P. 23(a)(2)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.* at 756 (citing *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010)). "'[F]or purposes of Rule 23(a)(2) even a single common question will do.'" *Id.* at 755 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Here, each Class Member's claims arise from the same common nucleus of operative facts and present the following common questions:

- Was a unilaterally-provided free newspaper delivery sufficient to extend Tribune's existing business relationship with a former customer?
- Were the violations at issue the result of error notwithstanding Tribune maintaining routine business practices that meet the TCPA's standards in 47 C.F.R. § 64.1200(c)(2)(i)?
- Did Tribune sufficiently establish and implement, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's National Do Not Call Registry rules, so as to excuse it from liability under 47 U.S.C. § 227(c)(5)?
- Were Tribune's TCPA violations knowing or willful, such that treble damages are appropriate under 47 U.S.C. § 227(c)(5)?

These questions are dispositive, apply equally to all Class Members, and, importantly, can be *answered* using common proof and uniform legal analysis; indeed, all Class Members were subjected to the same "winback" type calls from Tribune's same telemarketer CES, pursuant to Tribune's same policies, practices, and procedures that allowed the violations at issue to occur. The commonality requirement is therefore met. As the Seventh Circuit has stated, "[c]lass certification is normal in litigation under § 227, because the main questions … are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

### c.  Plaintiff's claims are typical of the Settlement Class.

As with commonality, the threshold requirement for typicality is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009). Typicality means that the plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of the other class members and ... [the] claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). This component is usually satisfied where "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). However, typicality does not require that the representative's claims be identical to every other class member. *See Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006) ("factual variations may not defeat typicality").

Here, Plaintiff satisfies typicality because his interests are sufficiently aligned with those of the Class. Plaintiff, like all Class Members, received multiple Tribune telephone solicitations in a 12-month period from CES more than 18 months after he cancelled his subscription. Exhibit 2, Burke Decl. ¶ 15. Plaintiff's number is on the Class List. Agr. at Ex. F, Row 6012. He seeks the same relief as the Class and is not subject to unique defenses. Consequently, typicality is met.

### d.  Plaintiff and his counsel are adequate representatives.

"Rule 23(a)(4) requires that the named Plaintiff and class counsel 'will fairly and adequately protect the interests of the class.'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014); *see also* Fed. R. Civ. P. 23(e)(2)(A) (providing that whether "the class representatives and class counsel have adequately represented the class" is a relevant factor in determining whether to approve a proposed settlement). In the adequacy analysis, the Court considers "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). While the Supreme Court has noted that adequacy and

19

typicality analysis "tend [ ] to merge," *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20

(1997), courts have rejected proposed class representatives due to "conflicts of interest" or

"serious credibility problems," *Birchmeier*, 302 F.R.D. at 252 (quotations and citations omitted).

Here, Plaintiff has no conflicting interests with Class Members. In fact, by investigating,

documenting, filing, and prosecuting this action, and participating in discovery and the

settlement process, Plaintiff has demonstrated a desire and ability to protect Class Members'

interests. Exhibit 2, Burke Decl. ¶ 15. There is nothing to suggest that Plaintiff has any interest

antagonistic to the vigorous pursuit of the class claims against Tribune. Rather, Plaintiff's

interests are perfectly aligned with those of the Class. *Id.* In addition, putative Class Counsel are

practitioners with substantial experience in consumer and class action litigation, including cases

under the TCPA similar to this one. *Id.* ¶¶ 2-11. The Rule 23(a) requirements, thus, are satisfied.

### 2. The Rule 23(b)(3) factors are satisfied.

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are

"sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck &*

*Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Windsor*, 521 U.S. at 623). Predominance is

satisfied so long as individual issues do not "overwhelm" common issues. *Id.* (quoting *Amgen*

*Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)). Common issues

predominate here because the central liability question— *i.e.*, whether the calls were made in

violation of the TCPA—can be established through generalized evidence. Predominance is

"readily met" in certain consumer cases. *Windsor*, 521 U.S. at 625. The touchstone for

predominance analysis in the Seventh Circuit is efficiency. *Butler v. Sears, Roebuck & Co.,* 702

F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *vac'd on other grounds* 133 S. Ct. 2768 (2013),

*judgment reinstated*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"), *cert. denied* 134 S. Ct. 1277

(2014). Predominance is not satisfied "if 'individual questions ... overwhelm questions common

to the class.'" *Butler II,* 727 F.3d at 801 (quoting *Amgen Inc.,* 133 S. Ct. at 1196).

Here, Class Members all arise from the same calling process and strategy, from the same telemarketing vendor CES, for a discrete Class List of persons who were similarly called for the same purpose of winning back their business as Tribune subscribers. This ensures a predominance of common questions concerning whether prior express invitation or permission existed, whether Tribune's systemic practices satisfied the standards and reasonableness that might excuse liability for violations under 47 U.S.C. § 227(c)(5) or 47 C.F.R. § 64.1200(c)(2)(i), and whether the violations were willful such that treble damages are appropriate under 47 U.S.C. § 227(c)(5)—all of which Plaintiff asserts can be determined on a class-wide basis through generalized evidence.[14] *See Sadowski v. Med1 Online, LLC*, No. 07-2973, 2008 WL 2224892, at *4-5 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant elected who was to receive the [ ] faxes"); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) ("Class certification is usually appropriate where liability turns on [a] uniform policy that is uniformly implemented, since in that situation predominance is easily established."). Consequently, predominance is satisfied.

Further, because the claims are being certified for purposes of settlement, there are no issues with manageability. *Windsor*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Additionally,

---

[14]     Tribune submits to certification of the Class here for purposes of settlement, only, and otherwise reserves the right to oppose class certification should the Settlement not be approved. Agr. § 13.

resolution of tens of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Butler*, 727 F.3d at 801 (noting that "the more claimants there are, the more likely a class action is to yield substantial economies in litigation") (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)). Thus, certification for purposes of settlement is appropriate.

### D. Scheduling a Final Approval Hearing Is Appropriate.

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement Agreement and offer argument in support of final approval. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, at least 85 days after the Preliminary Approval Order is entered, and schedule further proceedings pursuant to the proposed Preliminary Approval Order attached as Exhibit D to the Settlement Agreement and Exhibit 3, hereto.

## V. CONCLUSION

The proposed class action settlement is fair, reasonable, adequate, and well within the permissible range of possible judicial approval. It should, therefore, be preliminarily approved in all respects, and the Court should direct notice to issue. To that end, Plaintiff respectfully asks that the Court enter a Preliminary Approval Order in the form attached hereto as Exhibit 3.

Respectfully submitted,

GEORGE MOORE, individually and on
behalf of others similarly situated

Dated: November 18, 2021                    By: */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 18, 2021, I caused the foregoing to be electronically

filed with the Clerk of the Court, using the CM/ECF system, which will send a notice of

electronic filing to all counsel of record.

*/s/ Alexander H. Burke*