**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated, | ) ) | Case No. 1:20-cv-07666 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TRIBUNE PUBLISHING COMPANY, | ) | Hon. Judge Matthew F. Kennelly |
| Defendant. | ) | Hon. Mag. Judge Gabriel A. Fuentes |

**PLAINTIFF'S MOTION FOR**
**ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    THE SETTLEMENT ..............................................................................................3

IV.     LEGAL STANDARD.............................................................................................4

V.      ARGUMENT ..........................................................................................................6

        A.      Class Counsel's Requested Fee Award Is Reasonable. ............................6

                1.      Class Counsel's fee request is presumptively reasonable............6

                2.       The risk associated with this litigation justifies the requested
                        fee award of one-third of the common fund. ................................7

                3.      The requested fee comports with the contract between Plaintiff
                        and Class Counsel, and typical contingency fee agreements
                        in this Circuit.............................................................................11

                4.      The requested fee reflects the fees awarded in other settlements. .............12

                5.      The quality of performance and work invested support the fee
                        request. ........................................................................................14

                6.      The stakes of the case further support the fee request. ..............15

        B.      The Court Should Also Award Reasonable Reimbursement for Expenses..........16

        C.      The Incentive Award to the Class Representative Should Be Approved. .............17

VI.     CONCLUSION......................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (N.D. Ill. July 17, 2015)............................................................. 13

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*,
2011 WL 1706061 (N.D. Ill. May 5, 2011) ............................................................. 10

*Anthem Ins. Cos.*,
2015 WL 3645208 (E.D. Mo. June 10, 2015) ......................................................... 12

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014)............................................................... 16

*Bickel v. Sheriff of Whitley Cnty*,
2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) ........................................................ 13

*Birchmeier v. Caribbean Cruise Line, Inc.*,
896 F.3d 792 (7th Cir. 2018) .................................................................................. 14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)............................................................................................ 5, 16

*Charvat v. AEP Energy, Inc.*,
No. 13-662 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 44) ............................................... 14

*Charvat v. Valente*,
2019 WL 5576932 (N.D. Ill. Oct. 28, 2019)............................................................. 5

*City of Greenville v. Syngenta Corp Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012)...................................................................... 13

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) .......................................................................... 17, 18

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) ................................................................................... 5, 6

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) .................................................................................. 11

*Gaskill v. Gordon*,
942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) ................... 5

*Golan v. Veritas Entm't, LLC*,
　　2017 WL 3923162 (E.D. Mo. Sept. 7, 2017) ......................................................... 10

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
　　2019 WL 2249941 (S.D. Fla. May 24, 2019) ......................................................... 12

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
　　2015 WL 13650934 (S.D. Fla. June 24, 2015) ....................................................... 12

*Hanley v. Tampa Bay Sports & Entm't LLC*,
　　2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) ....................................................... 12

*Heekin v. Anthem, Inc.*,
　　2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ....................................................... 18

*In re Cont'l Ill. Sec. Litig.*,
　　962 F.2d 566 (7th Cir. 1992) ......................................................................... 5, 6

*In re Dairy Farmers of Am., Inc.*,
　　2015 WL 753946 (N.D. Ill. Feb. 20, 2015) .......................................................... 13

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
　　2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) ....................................................... 17

*In re Marsh ERISA Litig.*,
　　265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................... 15

*In re Synthroid Mkt. Litig.*,
　　264 F.3d 712 (7th Cir. 2001) .............................................................. 4, 11, 16, 17

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
　　724 F. Supp. 160 (S.D.N.Y. 1989) ...................................................................... 5

*Jamison v. First Credit Servs.*, Inc.,
　　290 F.R.D. 92 (N.D. Ill. 2013) .......................................................................... 9

*Kirchoff v. Flynn*,
　　786 F.2d 320 (7th Cir. 1986) ......................................................................... 7, 11

*Kolinek v. Walgreen Co.*,
　　311 F.R.D. 483 (N.D. Ill. 2015) ............................................................... 12, 14, 15

*Kujat v. Roundy's Supermarkets Inc.*,
　　2021 WL 4551198 (N.D. Ill. Aug. 11, 2021) ....................................................... 13

*Linnear v. Illinicare Health Plan, Inc.*,
　　2019 WL 13072750 (N.D. Ill. Dec. 17, 2019) ....................................................... 13

*Martin v. JTH Tax, Inc.*,
   2015 WL 13883998 (N.D. Ill. Sept. 23, 2015) ........................................................ 14

*McCue v. MB Fin., Inc.*,
   2015 WL 4522564 (N.D. Ill. July 23, 2015) ............................................................ 13

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012) ................................................................................................ 16

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) .................................................................................. 15

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ................................................................................ 6, 7

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014) ................................................................................ 6, 7

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
   2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ........................................................... 11

*Schwyhart v. AmSher Collection Servs., Inc.*,
   2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ......................................................... 12

*Silverman v. Motorola Solutions, Inc.*,
   739 F.3d 956 (7th Cir. 2013) .................................................................................... 7

*Spano v. The Boeing Co.*,
   2016 WL 3791123 (S.D. Ill. March 31, 2016) ......................................................... 13

*Spicer v. Chi. Bd. Options Exch., Inc.*,
   844 F. Supp. 1226 (N.D. Ill. 1993) ......................................................................... 17

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007) ......................................................................... 5, 7, 14

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) ............................................................................ 11, 13

*Will v. Gen. Dynamics Corp.*,
   No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ................................... 13, 18

*Wreyford v. Citizens for Transportation Mobility, Inc.*,
   2014 WL 11860700 (N.D. Ga. Oct. 16, 2014) ......................................................... 12

*Young v. Rolling in the Dough, Inc.*,
   2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ............................................................. 13

*Zolkos v. Scriptfleet, Inc.*,
  2015 WL 4275540 (N.D. Ill. July 13, 2015) .................................................................. 13

## **Statutes**

15 U.S.C. § 1692k(a) ...................................................................................................... 11

47 U.S.C. § 227(b)(3) .......................................................................................... 8, 10, 16

47 U.S.C. § 227(c)(5) ........................................................................................ 2, 8, 9, 11

720 ILCS 5/14–2 .............................................................................................................. 9

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 16

## **Regulations**

47 C.F.R. § 64.1200(c)(2) ............................................................................................ 2, 8

47 C.F.R. § 64.1200(c)(2)(ii) ........................................................................................... 9

47 C.F.R. § 64.1200(f)(15) ............................................................................................... 2

47 C.F.R. § 64.1200(f)(5) ................................................................................................. 2

## I.     <u>INTRODUCTION</u>

The Court preliminarily approved a class action settlement ("Settlement") of this action on November 23, 2021. Dkt. 45.  The Settlement is an excellent result; it requires Defendant Tribune Publishing Company ("Tribune") to pay $1,700,000 into a non-reversionary, common fund for the benefit of a 28,412-member Settlement Class of consumers whose telephone numbers its vendor CES called more than once in a 12-month period between December 11, 2017 and April 15, 2021, despite being on the National Do Not Call Registry. Class Members don't have to do anything to receive benefits: Checks for approximately $30 will automatically be distributed after the Settlement becoming Final, and Tribune has agreed to modify its practices to prevent further violations in the future.

The Settlement is the result of the dedicated efforts of experienced and knowledgeable attorneys, who negotiated the proposed Settlement after mediation with a well-respected, retired federal magistrate judge. The Settlement was achieved only after Plaintiff's counsel had received substantive discovery and information as to the size and nature of the Class, which guaranteed informed and effective negotiations.

Plaintiff respectfully seeks a fee award for Class Counsel of $566,666, which is one-third of the common fund and is consistent with fees awards in other TCPA class actions, as well as reimbursement of their expenses totaling $11,103.14. Plaintiff also seeks an incentive award of $10,000, for his services as Class Representative. The requested attorneys' fees and incentive award are reasonable and in line with applicable law in this Circuit. For these reasons, and as set forth herein, Plaintiff respectfully requests that the Court grant this motion.

## II.   **BACKGROUND**

Plaintiff filed this lawsuit against Tribune on December 20, 2020, to obtain redress for himself and others for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Relevant here, the TCPA's regulations prohibit initiating telephone solicitations to phone numbers on the National Do Not Call Registry.[1] 47 C.F.R. § 64.1200(c)(2). While the TCPA permits such calls if made within eighteen months of a purchase or transaction by the consumer,[2] Tribune and its vendor CES improperly inflated this established business relationship ("EBR") exception, by counting Tribune's issuance of free newspaper samples as a "transaction" for EBR purposes. Plaintiff and tens of thousands of other consumers on the National Do Not Call Registry incurred illegal telemarketing calls for Tribune due to this systemic failure to properly calculate applicable established business relationship periods.

Class Counsel zealously advocated on behalf of the Class in this case. They engaged in pre-suit investigation and, after filing, pursued extensive discovery from Tribune and applicable third parties. They worked with Plaintiff to respond to Tribune's discovery requests, successfully defended against a motion to compel filed by Tribune in all but "one limited respect," Dkt. 32, Tr. p. 4, and briefed Plaintiff's own motion to compel discovery from Tribune, which hung over Tribune's head while the Parties engaged in mediation. Dkt. 31. In addition to written discovery responses and substantive documents as to Plaintiff and Tribune's policies, practices, and procedures, Class Counsel analyzed hundreds of millions of rows of call and consumer data Tribune and its vendor CES produced pertinent to class discovery. Exhibit A, Burke Decl. ¶ 15.

---

[1]   The TCPA grants a private right of action for any consumer who incurs more than one National Do Not Call Registry violation in a 12-month period. 47 U.S.C. § 227(c)(5).

[2]   *See* 47 C.F.R. § 64.1200(f)(15) (defining "telephonic solicitation" relevant to the TCPA's National Do Not Call Registry rules to exclude calls to "any person with whom the caller has an established business relationship"); 47 C.F.R. § 64.1200(f)(5) (defining an "established business relationship").

On October 4, 2021, the Parties participated in mediation with the Hon. Morton Denlow (Ret.) of JAMS, a well-known mediator with experience in resolving class actions, including under the TCPA. Dkt. 39-1, Agr. ¶ 1.2. In advance of this mediation, Class Counsel insisted that Tribune produce information and records relevant to the size and nature of the Class. Exhibit A, Burke Decl. ¶ 16. The Parties conducted extensive settlement discussions, with Class Counsel preparing and serving a detailed mediation brief on Tribune beforehand. *Id.* Though a general term sheet was agreed to at the mediation, for several weeks thereafter, the Parties negotiated the specific terms of the Settlement and completed confirmatory discovery. *Id.* The Court preliminarily approved the Settlement on November 23, 2021. Dkt. 45.

### III.  THE SETTLEMENT

The Settlement requires Tribune to pay $1,700,000 for the benefit of a Settlement Class defined as:

> All persons who received more than one telephone solicitation from CES regarding Tribune's goods, products, or services in a rolling 12-month period, more than eighteen months after they terminated their relationship with Tribune and whose telephone number was on the National Do Not Call Registry, limited to persons whose phone numbers are on the Class List.

Dkt. 45, Order ¶ 5. The "Class List" is limited to the 28,412 individuals on the Class List. *Id.* Each Class Member is entitled to a *pro rata* share of the Settlement Fund less notice and administrative costs, Class Counsel's fees and expenses, and any incentive award the Court may award. Dkt. 39-1 ("Agr.") ¶ 13.3. Class Members are not required to submit a claim to receive payment; rather, the Settlement Administrator will distribute settlement checks – estimated at $30 each – automatically within forty-five days of the Final Settlement Date. *Id.* The Settlement is completely non-reversionary: All unclaimed or undistributed amounts remaining in the Settlement Fund after initial payments will, if administratively feasible, be redistributed to the

Settlement Class or, if not, be provided to the National Consumer Law Center or other Court-approved *cy pres* recipient. *Id.* ¶ 4.3.5. Tribune has also agreed to modify its practices to avoid further violations—specifically, to cease using free newspaper subscriptions as a basis for calculating the established business relationship cutoff for telephone solicitations. *Id.* ¶ 4.2.

Plaintiff respectfully requests that the Court approve attorneys' fees of $566,666 and costs of $11,103.14, as well as a $10,000 incentive award for Plaintiff Moore. As explained below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested incentive award is comparable to other TCPA cases and should be approved.

## IV.   <u>LEGAL STANDARD</u>

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at the start of the case: The Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a

4

common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

The "normal practice" for consumer class actions in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class. *Charvat v. Valente*, 2019 WL 5576932, at *11 (N.D. Ill. Oct. 28, 2019) (citation omitted; citing cases); *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) ("[T]here are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration"). As other courts have explained:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage-of-fund method "provides a more effective way of determining whether the hours expended were reasonable"), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

The Seventh Circuit has also determined that, in assessing the reasonableness of requested attorneys' fee, courts should consider the ratio of "(1) the fee to (2) the fee plus what

the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (omitting administrative costs and incentive awards from analysis). The Seventh Circuit has clarified that the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

## V.   ARGUMENT

### A.   Class Counsel's Requested Fee Award Is Reasonable.

The percentage-of-the-fund method should be used here. *See Florin*, 34 F.3d at 566. Class Counsel's and Plaintiff's efforts have resulted in a $1,700,000 non-reversionary Settlement Fund that provides substantial, actual value to the Settlement Class. Class Members are expected to receive over $30 each, without having to complete a claim form. *See* Dkt. 39 p. 10 n. 6. And they will also benefit from Class Counsel negotiating to have Tribune cease its practices that resulted in Class Members getting called in the first place. Agr. ¶ 4.2. Class Counsel seek attorneys' fees of one-third of the Settlement Fund, or $566,666, plus out-of-pocket costs of $11,103.14. This request is presumptively reasonable under Seventh Circuit case law, and is consistent with the market price for Class Counsel's services, as reflected in the fees approved by judges in this Circuit in other TCPA class cases, and considering the risks of non-payment, the quality and extent of Class Counsel's work, and the overall stakes of the case.

#### 1.   *Class Counsel's fee request is presumptively reasonable.*

"The object in awarding a reasonable attorney's fee … is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572. Generally speaking, the "ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson*, 772 F.3d at

6

781 (quoting *Redman*, 768 F.3d at 630). In consumer class actions in the Seventh Circuit, attorneys' fees to counsel "should not exceed a third or at most a half of the total." *Redman*, 768 F.3d at 631.

Here, Class Counsel seek one-third of the Settlement Fund in fees, or $566,666. This equates to 35.2% of the net Settlement Fund after subtracting costs and Plaintiff's requested incentive award[3]—well under the 50% limit the Seventh Circuit deemed presumptively reasonable in *Pearson* and *Redman*.

> **2.      *The risk associated with this litigation justifies the requested fee award of one-third of the common fund.***

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See Sutton*, 504 F.3d at 694 (finding abuse of discretion where lower court, in applying percentage-of-the-fund approach, refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

---

[3]    If Counsel's requested fees are approved, the Settlement Class Members will directly receive roughly $1,042,230.86 (i.e., $1,700,000 settlement fund - $566,666 requested attorneys' fees - $11,103.14 expenses - $10,000 requested class representative award - $70,000 estimated administration costs). Based on the ratio set forth in *Pearson* and *Redman*—i.e., fees ($566,666) to fees plus the direct value to class members ($566,666 + $1,042,230.86)—the request for fees constitutes 35.2% of the net settlement value.

Class Counsel pursued this case on an entirely contingent fee basis, and their fee request is supported by the difficulties for class certification, summary judgment, and trial presented by Plaintiff's claims. For example, Class Counsel took on this case without knowing the extent and scope of the calling at issue for Plaintiff and others like him, and (based on past experience) anticipating discovery disputes and heavy data work. Exhibit A, Burke Decl. ¶ 14. This proved to be correct: Tribune and its vendor CES produced hundreds of millions of rows of data that Class Counsel had to analyze, and through which they identified Tribune's practice of having CES perform telemarketing on its behalf without properly calculating when such calls could properly be made pursuant to an existing business relationship. *Id.* ¶ 15. It was this discovery, and Class Counsel's insistence on further refinement from Tribune in advance of mediation, that ultimately led to the proposed class-wide resolution of this case for the narrow set of consumers affected by such practices. *Id.*

Tribune's defenses also presented considerable risk that Class Counsel would ultimately receive nothing for their efforts. Unlike some sections of the TCPA that essentially impose strict liability for violations, e.g., 47 U.S.C. § 227(b)(3), its National Do Not Call Registry regulations allow defendants to avoid liability where they can show that the violation was made in error notwithstanding routine business practices that satisfy certain minimum standards. 47 C.F.R. § 64.1200(c)(2). And the TCPA's private right of action for do-not-call violations itself provides an additional catch-all defense where "the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulation[.]" 47 U.S.C. § 227(c)(5). Here, Tribune does maintain policies, practices, and procedures generally intended to prevent TCPA violations, and so there was substantial risk that, if this case were to proceed to summary judgment or trial, the Court would

find them sufficient to deny Plaintiff and the Class any relief from which Class Counsel might ultimately be compensated for their efforts.

Additionally, Tribune here did not physically place the calls at issue, and so there was further risk of zero compensation if the Court were to ultimately decline to hold Tribune liable for its vendor's violations. This is particularly the case here, where Tribune argued that any violations occurred outside its control or the scope of any agency relationship with its vendor, in light of its contract and policies. Tribune also raised a novel argument that it couldn't be liable for calls its vendor made to Plaintiff because he previously asked not to be called, since those calls, too, purportedly fell outside the scope of any principal-agent relationship. If the Court had ruled in Tribune's favor on these points, this would have severely curtailed or eliminated Plaintiff's and many Class Members' ability to obtain redress.

There was also risk that Class Counsel would be unable to secure class redress in this case, which would curtail their ability to secure full compensation for their time and effort because the TCPA does not afford statutory attorneys' fees. 47 U.S.C. § 227(c)(5). For instance, Class Counsel assumed the risk that the Court might accept arguments from Tribune that a litigation class cannot be certified in this case due to purported manageability issues in identifying class members or the supposed need to conduct individualized inquiries into EBRs and consent for the calls at issue.[4] *See Jamison v. First Credit Servs.*, Inc., 290 F.R.D. 92, 106 (N.D. Ill. 2013) (citing cases denying class certification due to perceived individualized TCPA consent issues). Tribune also argued that Plaintiff would be unable to satisfy Fed.R.Civ.P. 23(a)'s typicality and adequacy requirements absent settlement because his recording of the illegal calls at issue allegedly violated Illinois eavesdropping law, 720 ILCS 5/14–2(a)(1, 3),

---

[4]    The TCPA's National Do Not Call Registry regulations grant an affirmative defense where calls are made with "the subscriber's prior express invitation or permission." 47 C.F.R. § 64.1200(c)(2)(ii).

potentially requiring exclusion of evidence and opening Plaintiff himself up to liability. Class Counsel disputes that such arguments properly apply Illinois law to the facts of this case or would materially affect the certification requirements, but the risk that the Court would decide otherwise nonetheless existed.

Class Counsel pursued this litigation on a contingency basis despite knowing that, even if they were ultimately successful at trial, they would likely face a lengthy appeal process or even a reduction in the amount of recovery to the Class based on the extent of statutory damages, especially where some courts view awards of aggregate, statutory damages with skepticism and either refuse to certify a class or reduce such awards on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, 2011 WL 1706061, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *Golan v. Veritas Entm't, LLC*, 2017 WL 3923162, *4 (E.D. Mo. Sept. 7, 2017) (reducing amount of damages in TCPA case).

Class Counsel assumed the risk of this litigation, including not only the allotment of time, but also the advancement of financial costs and expenses necessary to prosecute this matter zealously on behalf of Plaintiff and the Class. Given the lack of fee shifting under the TCPA, 47 U.S.C. § 227(c)(5), and the unknown variables in relation to the size and nature of the class pre-suit, whether this Court would ultimately certify Plaintiff's proposed class on a litigation basis, and whether Plaintiff would ultimately be successful on the merits of his claims, the risk Class Counsel assumed was significant. This factor supports the requested fee award.

### 3. *The requested fee comports with the contract between Plaintiff and Class Counsel, and typical contingency fee agreements in this Circuit.*

The "actual fee contracts that were negotiated for private litigation" may also be relevant considerations to a fee request *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing *Synthroid I*, 264 F.3d at 719).[5]

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (finding 40% to be "customary fee in tort litigation"); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"). This contingency range is further supported by the fact that the TCPA is not fee-shifting; as such, the attorney's fee model is more akin to personal injury matters than fee-shifting cases such as those brought under other consumer statutes like the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a). This absence of fee shifting increases the risk to counsel, especially where, as here, the underlying statute places a cap on the amount of per-violation statutory damages of up to $500 or, at most, $1,500 upon a finding of willfulness. 47 U.S.C. § 227(c)(5). Thus, prosecuting even a less complex TCPA case is cost-prohibitive in the absence of an exceptionally large number of calls or class-wide recovery, especially where the extent of possible monetary relief under the TCPA for a single, non-willful violation barely covers the cost of filing a lawsuit.

Here, the fees contemplated under Class Counsel's representation agreements for cases in this District and elsewhere fall within the typical one-third to 40% range. Exhibit A, Burke Decl. ¶ 13. This factor supports a finding that the requested fee reflects the amount Class Counsel

---

[5]    The Seventh Circuit has also indicated that data from class-counsel auctions can aid in identifying the market rate, but this is "basically non-existent" in the TCPA context. *Kolinek*, 311 F.R.D. at 501.

would have received had they negotiated their fee ex ante, and should be awarded.

**4.    *The requested fee reflects the fees awarded in other settlements.***

"As the Seventh Circuit has held, attorney's fee awards in analogous class action

settlements shed light on the market rate for legal services in similar cases." *Kolinek v. Walgreen*

*Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) (citation omitted).

The reasonableness of Class Counsel's fee request here is further supported by the fact

that awards of one-third of a TCPA settlement fund are commonplace in this Circuit and

elsewhere. *See Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, 2019 WL 10248700, at *4

(N.D. Ill. Dec. 10, 2019) (awarding one-third of total settlement fund in fees in TCPA class case,

finding it to be what "a reasonable class of plaintiffs making an *ex ante* bargain would have

agreed to pay"); *Kondash v. Citizens Bank, Nat'l Ass'n*, 2020 WL 7641785, at *4 (D.R.I. Dec. 23,

2020) ("[T]he traditional one-third of the fund has been routinely approved as appropriate for

TCPA settlements in courts in other circuits."); *Hanley v. Tampa Bay Sports & Entm't LLC*, 2020

WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (finding, in TCPA class case, that courts

"routinely approve fee awards of one-third of the common settlement fund"); *Schwyhart v.*

*AmSher Collection Servs., Inc.*, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (same);

*Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla. May 24,

2019) (awarding one-third fees plus costs); *Wreyford v. Citizens for Transportation Mobility,*

*Inc.*, 2014 WL 11860700, at *2 (N.D. Ga. Oct. 16, 2014) (awarding 33 1/3% fees plus costs);

*Guarisma v. ADCAHB Med. Coverages, Inc.*, 2015 WL 13650934, at *4 (S.D. Fla. June 24,

2015) (approving one-third fee award plus costs); *Lees v. Anthem Ins. Cos.*, 2015 WL 3645208,

at *4 (E.D. Mo. June 10, 2015) (34%).

Fees of one-third of the fund are commonly awarded in non-TCPA class actions, too.

*Kujat v. Roundy's Supermarkets Inc.*, 2021 WL 4551198, at *4 (N.D. Ill. Aug. 11, 2021) ("Plaintiffs' request for one-third of the total settlement amount in attorneys' fees is consistent with the market in the Northern District of Illinois."); *Young v. Rolling in the Dough, Inc.*, 2020 WL 969616, at *6 (N.D. Ill. Feb. 27, 2020) ("District courts in the Seventh Circuit typically award 1/3 of the common fund in attorneys fees."); *Linnear v. Illinicare Health Plan, Inc.*, 2019 WL 13072750, at *3 (N.D. Ill. Dec. 17, 2019) (finding fee award of 35% of gross settlement fund to be "consistent with the market" in this District); *Taubenfeld*, 415 F.3d at 600 (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"); *Spano v. The Boeing Co.*, 2016 WL 3791123 (S.D. Ill. March 31, 2016) (awarding 33 1/3% of the monetary settlement); *McCue v. MB Fin., Inc.*, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, 2015 WL 4275540 (N.D. Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Bickel v. Sheriff of Whitley Cnty*, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am., Inc.*, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the fund).

Indeed, even if this Court were to consider Plaintiff's fee request in terms of the *Pearson*

reasonableness ratio (i.e., fee as a percentage of the fee plus total in direct benefits to the class), that 35.2% figure here likewise falls within the range of reasonableness in this Circuit—especially given the exceptional result achieved. *E.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming fee award in TCPA class action for, inter alia, "the sum of 36% of the first $10 million"), *cert. denied*, 139 S. Ct. 923 (2019); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same); *Martin v. JTH Tax, Inc.*, 2015 WL 13883998, at *3 (N.D. Ill. Sept. 23, 2015) (37% of TCPA class settlement fund exclusive of costs and service award, per Dkt. 76); *Kolinek*, 311 F.R.D. at 501 (36% of TCPA class settlement fund exclusive of notice/admin costs and service award); *Charvat v. AEP Energy, Inc.*, No. 13-662 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 44) (awarding one-third of fund in TCPA case, which was 40% of common fund less administration costs).

Plaintiff respectfully submits that the success Class Counsel secured on behalf of the Class despite the considerable obstacles and risk faced in this litigation supports the requested fee, especially where the requested fee award falls in line with numerous other approved settlements.

### 5. *The quality of performance and work invested support the fee request.*

The quality of Class Counsel's performance and work invested through substantial discovery and adversarial negotiations to achieve a $1.7 million Settlement Fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of compensation, whatsoever, only achieving the Settlement after substantial litigation. They conducted a pre-suit investigation, propounded discovery on Tribune and subpoenaed third parties, reviewed corresponding

productions (including analyzing hundreds of millions of rows of data), largely successfully defended a motion to compel, filed a motion to compel discovery from Tribune, participated in an all-day mediation preceded by mediation briefing, spent weeks thereafter negotiating and finalizing the settlement and ancillary papers, and otherwise zealously prosecuted this action for the benefit of the Class. Exhibit A, Burke Decl. ¶¶ 15-16.

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. *See* Exhibit A, Burke Decl. ¶¶ 2-11. And because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010).

Moreover, the quality of the Settlement that Class Counsel achieved speaks for itself. It is entirely non-reversionary, and provides for an estimated, automatic payout of more than $30 to all Class Members for whom an address can be identified—without the need for a claims process. The absence of a claims process means that more of the fund will be spread out to more class members, rather than to the relatively small percentage who happen to submit a claim.[6] And the comparable amount distributable to the Class exceeds many other TCPA settlements, too. For example, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015), had a $11 million TCPA class settlement that afforded monetary relief on a per-claim basis. The claim rate in *Kolinek* was approximately 2.5% (roughly 230,000 out of 9.2 million class members), and each claimant ultimately received around $30 per claim. *Id.* If the parties here had structured this deal like the *Kolinek* settlement, with a 2.5% claim rate and 33⅓% attorney's fees, claimants would receive approximately $1,462.44 apiece.

Given the strength of the Settlement obtained for the Class, the extensive discovery

---

[6] *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667 (7th Cir. 2015) (recognizing that "only a tiny fraction of eligible claimants ever submit claims for compensation in consumer class actions").

conducted, and the adversarial nature of the litigation and settlement discussions, Class Counsel respectfully submit that their experience, and the quality and amount of work invested for the benefit of the Class, supports the requested fee.

### 6. The stakes of the case further support the fee request.

The stakes of the case further support the requested fee award. The Settlement seeks to resolve the claims of 28,412 Settlement Class Members. Dkt. 39-1, Agr. § 3. The amount each Settlement Class Member is individually eligible to recover under the TCPA is low—up to $500 and no more than $1,500 per violation, *see* 47 U.S.C. § 227(c)(5)—and thus individuals are unlikely to file individual lawsuits, especially because the TCPA does not provide for the recovery of attorneys' fees. *Id.*; *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386 (2012) (noting consumers unlikely to bring a $500 TCPA claim in federal court in light of then-current $350 civil filing fee). A class action is realistically the only way most Class Members will receive any relief, and the settlement Class Counsel achieved here, which provides strong prospective relief and guarantees them more than $30 each without even needing to submit a claim form, is a terrific result. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

### B. The Court Should Also Award Reasonable Reimbursement for Expenses.

It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses. *Beesley v. Int'l Paper Co.*, 2014 WL 375432, *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing*, 444 U.S. at 478). The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid I*, 264 F.3d at 722;

*see also Spicer v. Chi. Bd. Options Exch., Inc.,* 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation).

Here, Class Counsel have incurred $11,103.14 in reimbursable expenses related to case filing, serving process and subpoenas, hearing transcript ordering, and mediation. <u>Exhibit A</u>, Burke Decl. ¶ 17. These expenses were necessary to prosecute a litigation of this size and complexity on behalf of the Settlement Class, and they are typical of expenses regularly awarded in large-scale class actions, based on counsel's experience. *Id.* Accordingly, Class Counsel request that the Court approve as reasonable expenses in the amount of $11,103.14.

## C. <u>The Incentive Award to the Class Representative Should Be Approved.</u>

Plaintiff Moore also respectfully requests that the Court grant him an incentive award of $10,000 for his efforts on behalf of the Class. Incentive awards compensating named plaintiffs for work done on behalf of the class are routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives."). Indeed, without Plaintiff serving as Class Representative, the Class would not have been able to recover anything. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *5 (N.D. Iowa Nov. 9, 2011) ("[E]ach … plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members. The requested incentive award for each named plaintiff recognizes this commitment and the benefits secured for other class members,

17

and is thus reasonable under the circumstances of this case.").

Mr. Moore spent considerable time pursuing Class Members' claims. In particular, he assisted Counsel in their pre-suit investigation, participated in the discovery process, including responding to interrogatories and production requests, communicated with counsel to keep apprised of this matter, submitted to scrutiny of his own actions in standing up for himself and other class members,[7] and ultimately approved and executed the Settlement Agreement. Exhibit A, Burke Decl. ¶ 18.

Moreover, the amount requested here, $10,000, is comparable to or less than other awards approved by federal courts. *E.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award); *Craftwood Lumber Co.*, 2015 WL 1399367, at *6 (awarding $25,000 service award to plaintiff in TCPA case); *Heekin v. Anthem, Inc.*, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will*, 2010 WL 4818174, at *4 (awarding $25,000 each to three named plaintiffs). Plaintiff thus respectfully asks that this request be granted.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and award Class Counsel $566,666 in fees and $11,103.14 to reimburse their out-of-pocket costs. Plaintiff further requests that the Court approve a service award to Plaintiff Moore in the amount of $10,000.

---

[7]    As the Court may recall, Tribune argued in these proceedings that Plaintiff violated an Illinois eavesdropping law by recording the illegal calls he received from its vendor, which Plaintiff viewed as a baseless, thinly veiled attempt to scare him off from continuing to pursue this action. *See* Dkt. 29 p. 6. Nonetheless, Plaintiff's resolve to zealously prosecute this action on behalf of himself and the class remained firm, without which this terrific class settlement would not have been possible.

Respectfully submitted,

GEORGE MOORE, individually and on
behalf of others similarly situated

Dated: January 7, 2022                          By: */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff and the Class*


## CERTIFICATE OF SERVICE

I hereby certify that, on January 7, 2022, I caused the foregoing to be electronically filed

with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic

filing to all counsel of record.

*/s/ Alexander H. Burke*

19