IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated,<br>        Plaintiff,<br><br>v.<br><br>TRIBUNE PUBLISHING COMPANY,<br>        Defendant. | Case No. 1:20-cv-07666<br><br>Hon. Judge Matthew F. Kennelly<br>Hon. Mag. Judge Gabriel A. Fuentes |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff George Moore respectfully requests that the Court finally approve his class action settlement with Tribune Publishing Company ("Tribune") in this Telephone Consumer Protection Act, Do Not Call Registry case. Tribune has agreed to pay $1,700,000 to establish a non-reversionary settlement fund that will be distributed *pro rata* to settlement class members who do not opt out.

Individual notice via either email or United States Mail was sent to all available names and addresses for the telephone numbers referenced in the class definition, which accomplished a notice delivery "reach" of 97.17%. The reaction of the Settlement Class has been very positive: There have been <u>zero objections</u>, and <u>three exclusions</u>, plus one exclusion received from a non-class member. If the Court finally approves the settlement as proposed, each class member who did not opt out should receive approximately $<u>31.44</u>, which exceeds the $30 estimate provided in the class notice.

All of the factors that courts consider support granting final approval of the settlement. The relief provided by the settlement is significant, and the settlement terms are straightforward and raise no red flags. The settlement ensures that class members are compensated without delay and

eliminates the risk of loss on class certification, at trial, or on appeal. Class counsel fully support the settlement.

Plaintiff requests that the Court finally certify the settlement class, approve the settlement as fair, reasonable and adequate, and approve payment of attorney's fees and costs, a service award, and administrative fees.

## I. BACKGROUND

### A. Nature of the Case.

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Relevant here, the TCPA prohibits initiating telephone solicitations to cellular or residential telephone numbers that are registered with the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2), (e). Exceptions exist, however, where for example the subscriber gave prior express invitation or permission for the calls, or where the violations were made in error despite compliant business practices. 47 C.F.R. § 64.1200(c)(2)(i)-(ii). Further, the TCPA defines "telephone solicitation" to exclude calls that occur subject to an established business relationship ("EBR")—i.e., where the calling occurs within 3 months of an inquiry or 18 months of a purchase or transaction by the subscriber. 47 C.F.R. §§ 64.1200(f)(5), (f)(15). The TCPA affords consumers a private right of action for damages and injunctive relief to consumers who incurred at least two such violations in a 12-month period. 47 U.S.C. § 227(c)(5).

Defendant Tribune is a large newspaper publisher. To increase subscriptions, Tribune used a third-party telemarketer, Customer Engagement Services, LLC ("CES"), to call former customers for purposes of trying to get them to renew their subscriptions. But while Tribune

provided CES with dates reflecting the last day of a purported EBR with each call recipient, sometimes this date reflected the end date of an unsolicited promotion of free newspapers, rather than the date the consumer terminated the relationship.[1]

Plaintiff's theory of the case is that Tribune's act of sending unsolicited newspapers to former customers does not constitute a "voluntary two-way communication" or a "purchase or transaction," and is therefore meaningless for purposes of EBR calculations. Tribune's and CES's records identify 28,412 unique phone numbers, including Plaintiff's, that, despite being on the National Do Not Call Registry, CES called on Tribune's behalf at least twice in a 12-month period after the 18-month EBR period had lapsed (i.e., the "Class List").

Plaintiff George Moore filed this lawsuit on December 22, 2020, after receiving repeated, unsolicited telemarketing calls for Tribune after he terminated the relationship and asked not to be called. Plaintiff's complaint alleges violations of the TCPA arising from telemarketing calls he and others received despite their phone numbers' registration with the National Do Not Call Registry, as well as for violations of the TCPA's internal do-not-call rules. Compl. ¶¶ 31, 40-58.

B.  **Notice and Claims.**

American Legal Claim Services, LLC ("ALCS") substantially implemented the notice plan approved by the Court, resulting in an approximately 97.17% delivery rate. Exhibit A, Salhab Decl. at ¶13. Tribune's records contained 35,998 available names, valid emails and mailing addresses for the 28,412 phone numbers referenced in the class definition. Salhab Decl. at ¶ 6. ALCS first attempted to send notice by email to class members where there was a valid email address. Salhab Decl. at ¶¶8-9. ALCS then followed up with United States Mail for emails

---

[1] For example, although Plaintiff cancelled his Chicago Tribune subscription on September 23, 2018, CES continued calling him on Tribune's behalf outside of the permissible 18-months window, based on an unsolicited, free "sample" paper Tribune sent him on November 29, 2018.

addresses that did not report as delivered, and for records that did not have a valid email address. Salhab Decl. at ¶10.

In total, ALCS attempted email notice to a total of 6,110 unique email addresses. Email addresses that were associated with multiple names in Tribune's records received an email for each such name. Salhab Decl. at ¶ 8-9. Emails were successfully delivered to 5,819 of the 6,110 unique email addresses. *Id.* ALCS also sent notice by United States Mail to 29,569 addresses associated with phone numbers Tribune called, which did not have a valid email or for which all email attempts bounced back. Salhab Decl. at ¶¶10-12. Although ALCS took measures to resend notices to updated addresses, 1,688 of the 29,569 mailed notices were eventually determined to be undeliverable. Salhab Decl. at ¶12.

In total, 805 of the 28,412 phone numbers referenced in the class definition – 2.83% – did not receive individual notice. Salhab Decl. at ¶13. Said another way, notice was successfully delivered to individuals associated with 97.17% of the phone numbers referenced in the settlement class definition. Although the parties had originally anticipated notice being sent by *both* email and United States Mail to *all* available addresses, the process that ALCS used had a fantastic result, which easily exceeds minimum due process requirements. *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 603 (N.D. Ill. 2016) (citing Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide at 3 (Federal Judicial Center 2010), for finding notice reaching "70% to 95% to be reasonable").

In addition to individual notice, and in accordance with the terms set forth in the settlement agreement, ALCS established a website at www.tribunetcpasettlement.com, that contained settlement information and related documents. Salhab Decl. at ¶14. The website allowed for Class Members to view frequently asked questions, and view and download the Settlement Agreement,

Preliminary Approval Order, Fee Petition and the long form notice. *Id*. The long form notice and frequently asked questions were also posted and downloadable in Spanish. *Id*. ALCS also established a dedicated toll-free phone number to provide answers to Class Member frequently asked questions ("FAQs"). Salhab Decl. at ¶15.

The deadline for Settlement Class Members to exclude themselves or object was February 7, 2022. Dkt. 45 at ¶ 10. In all, ALC received 4 exclusions (one of which was submitted by a non-class member) and 0 objections. Salhab Decl. at ¶¶ 16-17. Moreover, ALCS now estimates its total fee will be $65,000, rather than its originally-projected $70,000. Salhab Decl. at ¶¶ 16-17.

## II. AUTHORITY AND ARGUMENT

A district court may approve a proposed settlement of a class action only after it directs notice in a reasonable manner to all class members who would be bound and finds, after a hearing, that the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). In making the latter determination, courts in this circuit consider the following factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed.... The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863–64 (7th Cir. 2014) (internal quotation marks and citations omitted). Rule 23(e)(2) also includes a list of points a court must consider in determining that a proposed class settlement is fair, reasonable, and adequate, including whether:

- the class representatives and class counsel have adequately represented the class;

- the proposal was negotiated at arm's length;

- the relief provided by the settlement is adequate, taking into consideration the costs, risks, and delay of trial and appeal; the effectiveness of the proposed method of distributing relief; the terms of any proposed award of attorneys' fees; any agreements made in connection with the proposed settlement.

- it treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

### A. The Settlement should be approved as fair, reasonable, and adequate.

1. Fed. R. Civ. P. 23(e)(2)(A): <u>Plaintiff and Class Counsel have Adequately Represented the Settlement Class and Support the Settlement.</u>

In granting preliminary approval of the settlement, the Court preliminarily found Plaintiff George Moore appeared to be an adequate class representative. Mr. Moore committed significant time to this case through active participation, including by gathering information and materials, responding to discovery requests, staying apprised of the proceedings, and considering and ultimately entering into the settlement. <u>Exhibit B</u>, Burke Decl. at ¶17. There is no indication that Plaintiff has a conflict with any Class Member; his interests in obtaining redress for Tribune's TCPA violations are fully aligned with the Class.

Additionally, class counsel, who have a good deal of experience litigating and settling TCPA class action cases, Burke Decl. at ¶ 6, wholeheartedly support the settlement. Burke Decl. ¶17; *see Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). These considerations support approval.

2. Fed. R. Civ. P. 23(e)(2)(B): <u>The Settlement was Negotiated at Arm's Length.</u>

The settlement was negotiated at arm's length. The parties sparred as to the merits of the case through multiple heated conferrals, and began settlement discussions in a professional but highly adversarial manner among themselves. When those discussions failed, the parties attended a full-day mediation with JAMS mediator, Morton Denlow, where they were finally able to agree on material terms. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011).

The parties have no side agreements, and there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and no other terms that should raise any red flags. Burke Decl. at ¶16; *Wong*, 773 F.3d at 864 (settlement approved absent "suspicious circumstances"). This factor supports approval.

    3.    Fed. R. Civ. P. 23(e)(2)(C): <u>The relief provided to the Settlement Class is adequate.</u>

          a.    *Further litigation would have been complex, lengthy, and expensive*.

While Plaintiff believes he would ultimately prevail in this action, Tribune asserts several potentially case-dispositive defenses that pose considerable risk. For example, Tribune contends that it is not liable for violations by its vendor, CES, and that Plaintiff would be unable to establish vicarious liability on an adversarial basis. Tribune also thinks that, on an adversarial basis, it would be able to poke holes into Plaintiff's adequacy or typicality, based on Plaintiff recording some of the illegal calls at issue in alleged violation of CES's privacy rights, and that CES continued to call him despite a do-not-call request notwithstanding Tribune's TCPA policies to the contrary. Tribune also contends that Plaintiff would be unable to certify a non-settlement class due to purported manageability issues in identifying class members and individualized inquiries based on consent, EBR, and identifying cellular or residential landline numbers applicable to a do-not-call claim. Plaintiff could, in the end, simply lose if the Court were to find the TCPA's catch-all

defense that the defendant had "reasonable practices and procedures" applicable. 47 U.S.C. § 227(c)(5). Relatedly, Tribune would argue to the jury that it should award damages on the low end of the $0-$500 spectrum for claims brought pursuant to 47 U.S.C. § 227(c)(5), which provides for damages of "up to" $500 available for each violation.

Although Plaintiff feels confident he would prevail, success at class certification, summary judgment, or trial is far from certain. Litigation would continue to be lengthy and expensive if this action were to proceed. Although the Parties have conducted discovery applicable to the settlement class, absent approval of the Parties' Settlement, substantial additional work—including further adversarial class and merits discovery, class certification briefing, summary judgment briefing, and trial—would remain. A Rule 23(f) appeal would almost certainly follow any adversarial certification ruling, which would further delay any judgment in favor of the class. Absent settlement, this case could conceivably drag on for another year or more, all without any guarantee that the class will obtain *any* recovery at all. The settlement avoids these risks and provides immediate and certain relief. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").[2]

Further, even if Plaintiff were ultimately successful at trial, at least some courts view awards of aggregate statutory damages with skepticism, and there is a real risk that any such award could be reduced on due process grounds, either in this Court or on appeal. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (affirming District Court's reduction of jury's $1.6 billion class damages verdict in class TCPA case to $10 per call, or $32,424,930).

---

[2] *See McCue v. MB Fin., Inc.*, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015) (noting courts "encourage parties to settle class actions early, without expending unnecessary resources," and citing *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013), for finding "early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

Given the costs, risks, and delay of further litigation, the settlement is reasonable. *See Gulbankian v. MW Mfrs., Inc.*, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014) ("Plaintiffs face difficult issues of proof, including maintenance of class status throughout trial, despite substantial individualized ... issues that would be raised at trial in defense.... Settlement thus avoids substantial risks and costs for both sides, giving a certain positive outcome in the face of a costly and uncertain one."); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"). This factor also supports approval.

        b.    *The Proposed Distribution of Funds is Effective.*

The settlement calls for issuing a check to each individual associated with a phone number on the class list who does not exclude themself; no claim form is necessary. Money left over from uncashed checks will be redistributed in subsequent rounds of check-issuances to the class members in the previous round who deposited their recoveries, until checks become so small that it is administratively infeasible to perform additional distributions. Dkt. 39-1 at ¶ 4.3.5. Only after direct distributions to class members become infeasible will funds be provided as *cy pres* to the National Consumer Law Center, or other non-profit the Court orders. *Id.*

        c.    *The Requested Attorney's Fees are Reasonable.*

Fed.R.Civ.P. 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." At preliminary approval, the Court considered the projected fee and found that – at least at the preliminary approval stage – the request seemed reasonable. Since then, class counsel filed a formal Motion for Attorney's Fees, Expenses, and Incentive Award, which explains in detail why the Court should award one-third of

the gross settlement, or $566,666.66, in fees. Dkt. 46. Class counsel timely and publicly filed their fee petition on January 7, 2022, one month before the February 7, 2022, objection and exclusion deadline, and posted the document on the settlement website. This process ensured that the class members were afforded ample opportunity to review the fee request and voice any concerns.

Timing for payment of fees under the settlement raises no red flags, either. The settlement calls for Tribune to fund the entire settlement within five days when the settlement becomes final, Dkt. 39-1 at ¶4.3.2, and specifies that the class must be paid within 45 days of when the settlement becomes final, Dkt. 39-1 at ¶13.3. Attorney's fees and any service award, however, are not required to be paid until 60 days after the settlement becomes final. Dkt. 39-1 at ¶¶ 14.1.1; 14.1.2.

        d.    *No Side Agreements.*

Fed.R.Civ.P. 23(e)(2)(C)(iv) and 23(e)(3), require that the parties identify any "agreement made in connection with the proposal." Here, all agreements among the parties are embodied in the formal settlement agreement that has already been presented to the Court. Dkt. 39-1. There are no side agreements to disclose. Burke Decl. at ¶ 17. This factor supports approval.

        e.    *The reaction of the Settlement Class was overwhelmingly positive.*

No class member has objected to the Settlement, no attorney general or other government agency has contacted Plaintiff's counsel or the administrator with regard to the settlement or CAFA notice and only three class members have requested exclusion. This positive response to the settlement by the class further supports final approval. *See, e.g., In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013), *aff'd as modified*, 799 F.3d 701 (7th Cir. 2015) (less than 0.01% objecting or opting out supports reasonableness of settlement); *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact

that more than "99.9% of class members have neither opted out nor filed objections ... is strong circumstantial evidence in favor of the settlement").

        f.     *The extent of discovery completed and stage of proceedings favor approval.*

The Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with continued litigation. Before mediating, the Parties exchanged first-party discovery, Tribune agreed to submit additional information identifying the extent and nature of the calling at issue, and the Parties exchanged pre-mediation briefs presenting the strengths and weaknesses of their respective positions. Burke Decl. at ¶¶ 15-16. Tribune also submitted to confirmatory discovery, and agreed to a "true up" of the settlement fund amount in the event additional Class Members were identified. *Id.* at ¶ 16.

As such, the Parties conducted enough discovery to be able to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation before negotiating the settlement. *See In re TikTok, Inc., Consumer Priv. Litig.*, 2021 WL 4478403, at *9 (N.D. Ill. Sept. 30, 2021) (noting presumption in several circuits "that a class action settlement reached through 'arm's-length negotiations between experienced, capable counsel after meaningful discovery' is fair, reasonable, and adequate") (citing cases).

        g.     *Strength of the case compared with the settlement offer.*

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 863–64 (citation omitted). First, the settlement recovery runs on the very high end of the market spectrum for TCPA cases. For example, *Snyder v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-08461 (N.D. Ill.), had a $21.5 million TCPA class settlement that afforded monetary relief on a per-claim basis. The claim rate in *Snyder* was approximately 16%, and each claimant

ultimately received around $70 per claim. *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *7 (N.D. Ill. May 14, 2019). If the parties had structured this settlement to require claim submissions like *Ocwen* did, with a 16% claim rate and 33⅓% attorney's fees, claimants would receive approximately $230 apiece. Indeed, the proposed claimant recovery here of about $31 is in line with many other TCPA cases that *did* require claim form submissions. *See, e.g., In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) ($34.60 per claimant); *Kolinek*, 311 F.R.D. at 494 (roughly $30 per claimant); *Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *8 (N.D. Ill. Oct. 28, 2019) ($22.17 per claim); *Rose v. Bank of Am. Corp.,* No. 11 Civ. 02390, 12 Civ. 04009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving settlement that paid $20 to $40 per claimant). As "[t]his Court has noted previously, valuing hypothetical continued litigation is necessarily somewhat speculative and not an exact science." *Aranda*, 2017 WL 818854, at *3 (citing *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 493 (N.D. Ill. 2015).

Moreover, cases brought under the Do Not Call Registry rules enjoy a less-concrete damages provision than the above comparables brought pursuant the TCPA's autodialer / prerecorded message-to-cell provisions. While autodialer/prerecorded message-to-cell cases command an *automatic minimum* of $500 in damages per violation, 47 U.S.C. §227(b)(3), a Do Not Call Registry claim is worth "up to $500 in damages for each" violation. 47 U.S.C. §227(c)(5). This difference is material: juries have awarded less than the maximum damages per violation in even the most egregious Do Not Call Registry cases. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 651 (4th Cir. 2019) (jury awarded $400 per call in Do Not Call Registry case, which the Court trebled[3]).

---

[3] Treble damages are available under both sections 227(b)(3) and 227(c)(5), which means this comparison remains apples-to-apples even though the judge in the *Krakauer* case ordered treble damages.

Here, the amount offered to the class is substantial given the risks in proceeding through class certification and to trial. Among other risks, Tribune would have argued that Plaintiff was unlike other class members because, although Tribune applied the contested EBR timing to his account, Plaintiff additionally demanded that calls cease. Tribune also would have argued that determining who was in the class was individualized issue that requires a customer-by-customer analysis. Next, Plaintiff risked losing on the merits on his claims if the Court found that Tribune's EBR calculation complied with the TCPA, or that Tribune should not be held vicariously liable for calls made by its vendor, CES. *See Aranda v. Carribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *3 (N.D. Ill. Mar. 2, 2017), *aff'd but criticized sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018) (granting final approval where "a key issue at trial would be the factually and legally complicated question of whether [defendants] could be held vicariously liable for the calls…."). The settlement avoids all these risks.

4. Fed. R. Civ. P. 23(e)(2)(D): <u>The Settlement Class Members are Treated Equitably</u>.

The settlement treats all class members the same. Each of the class members that did not opt out is entitled to the same amount of money. Moreover, class members were not required to submit any claim form at all. The equal distribution to all class members who filed valid claims "is reasonably equitable" and favors approval. *Snyder*, 2019 WL 2103379, at *5 (even if some class members received more unwanted calls than others, the ability to opt out provides a safety valve). For all of these reasons, Plaintiff respectfully requests that the Court approve the settlement as fair, reasonable, and adequate.

**B. The Settlement Class should be finally certified for settlement purposes.**

The Court conditionally certified the settlement class for settlement purposes when it granted preliminary approval of the Settlement. Dkt. 45 at ¶ 6. The Court concluded that the Settlement Class satisfies numerosity because it includes persons associated with the 28,412 phone

numbers CES called on Tribune's behalf. *Id*. at ¶¶ 5-6. Commonality is satisfied because whether Tribune's EBR calculations were correct, and whether Tribune should be held vicariously liable for calls made by CES is a common question. Typicality is satisfied because Plaintiff's and the class members' claims arise from the same course of alleged conduct. And the settlement class satisfies adequacy because Plaintiff does not have any conflicts with settlement class members, has demonstrated his commitment to the settlement class, and has retained qualified counsel. Predominance is satisfied because the central (and common) issue is whether Tribune's EBR policy comports with the TCPA, 47 C.F.R. § 64.1200(c) & (f)(4). Superiority is satisfied because resolution of thousands of the relatively small-value claims in this one action is far preferable to a multitude of individual lawsuits and promotes consistency and efficiency of adjudication. For these reasons, the Court should finally certify the settlement class for settlement purposes.

    **C.**  **The notice program complied with Rule 23 and due process.**

The notice program implemented by ALCS satisfied the requirements of Rule 23 and due process. Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Individual notice is the gold standard for class action settlements, and must be used if feasible. Fed.R.Civ.P. 23(c)(2)(B); *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676 (7th Cir. 2013). The individual notice plan here was sent to class members via email or United

States Mail, and was successful in reaching 97% of the class. This notice was thus was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and described "the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

The notices were written in plain language and available on the settlement website in both English and Spanish, and included the dates for class members to respond and the final approval hearing. Salhab Decl. at ¶15; Dkt. 39-1 at ECF pp. 32 (mailed notice), 36 (email notice) and 39 (long form notice). Additionally, the website address was printed on all notices. *Id*. Located at www.tribunetcpasettlement.com, the website lists important dates—including the new dates to submit claims, objections, and exclusion requests and for the final approval hearing—and settlement class members' rights and options, includes frequently asked questions and key documents from the case like the settlement agreement and motion for attorneys' fees. Salhab Decl. at ¶15. The website (and notices) also provided a toll-free number that class members could call to reach an automated phone system with recorded answers to frequently asked questions. Salhab Decl. at ¶14.

Again, this notice campaign was highly successful, having reached 97.17% of the class through individual notice. The fact that notice thus comports with both Rule 23 and Due Process also supports entry of final approval.

## II. CONCLUSION

WHEREFORE, Plaintiff and class counsel respectfully requests that the Court finally certify the settlement class, grant class counsel's Motion for Attorney's Fees and Costs and Service Award, and finally approve this Settlement as fair, reasonable, and adequate.

A proposed order finally approving the settlement and granting the fee petition is attached as Exhibit C, and a proposed final judgment is attached as Exhibit D. These documents will also be

emailed to the Court's proposed order inbox.

                                                Respectfully submitted,

                                                <u>/s/Alexander H. Burke</u>

Alexander H. Burke
Daniel J. Marovitch
aburke@burkelawllc.com
dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, Illinois 60201
Telephone: (312) 729-5288